# UNITED STATES DISTRICT COURT

# DISTRICT OF MARYLAND

**DR. BARBARA FEINSTEIN**,
13149 Whistler Mountain Rd.
Delray Beach, Florida 33446,

*Individually and on Behalf of All
Others Similarly Situated*,

                    Plaintiff,

v.

**HYUNDAI MOTOR COMPANY**,
12, Heolleung-ro, Seocho-gu,
Seoul, Korea

and

**HYUNDAI MOTOR AMERICA**,
10550 Talbert Avenue
Fountain Valley, CA 92708

and

**GENESIS MOTOR AMERICA, LLC**,
10550 Talbert Avenue
Fountain Valley CA 92708,

                    Defendants.

CASE NO.

**CLASS ACTION
COMPLAINT**

JURY TRIAL
DEMANDED

(1)  Violations of Maryland
Consumer Protection Act, Maryland
Code Ann., Com. Law § 13-101 Et
Seq.
(2)  Breach Of Express Warranty
(3)  Breach Of Implied Warranty
(4)  Unjust Enrichment
(5)  Alternative Count for Violation
Of State Consumer Protection Acts

NOW COMES Plaintiff, Dr. Barbara Feinstein, on behalf of herself and all others similarly situated, and alleges as follows:

I.    **Introduction:**

*Hyundai/Genesis Fails to Deliver Promised High Performance GV-80 SUV*

1.    Defendants, Hyundai Motor Company, Hyundai Motor America, and Genesis Motor America LLC, (referred to collectively as "Hyundai/Genesis"), are the designers, manufactures, distributors, sellers and/or lessors of and/or market, advertise, promote and service Genesis automobiles – Hyundai/Genesis' proclaimed, luxury line of automobiles.

2.    Defendants, Hyundai/Genesis, promote, advertise and market their Genesis line of automobiles as "true luxury," being "thoughtfully crafted with rich design elements, innovative technology and dramatic performance capabilities."[1]

3.    Beginning with model year 2021, Hyundai/Genesis introduced to its Genesis line, its first ever SUV, the Genesis GV-80, the subject Class Vehicle.

4.    Hyundai/Genesis advertise, market and promote their Genesis GV-80 SUV as "equipped with high-performance capabilities that make for fun, powerful and truly dynamic driving on or off road."[2]

5.    Hyundai/Genesis boast that the Genesis GV-80 SUV "…confidently delivers balanced and powerful performance for sheer driving pleasure" and "pushes the limits of style and performance.…" *Id.*

---

[1] https://www.genesis.com/us/en/2021/genesis-gv80.html.
[2] Id.

6.     In reliance upon Hyundai/Genesis' representations of the performance capabilities of the Genesis GV-80 SUV, consumers, such as Plaintiff, have spent over $70,000[3] for the purchase of and over $900 a month to lease[4] the Genesis GV-80 SUV.

7.     Unfortunately, consumers, such as Plaintiff, who purchased or leased Hyundai/Genesis' GV-80 SUVs, have not experienced the high performance capabilities that Hyundai/Genesis promised.[5]

8.     Consumers, such as Plaintiff, who purchased or leased a Hyundai/Genesis GV-80 SUV, have instead experienced dangerous instability, shuddering, vibrations and uncontrolled veering of their SUVs, while driving at moderate speeds.

*Hyundai/Genesis Conceals Known Defects*

9.     Hyundai/Genesis knew of the defects in their Genesis GV-80 SUVs that caused the SUVs to dangerously shake, shudder, vibrate and uncontrollably attempt to veer off the roadway, while driving at moderate speeds.

10.     Defendant, Hyundai Motor Company, in fact has confirmed that in June of 2020, Defendants had to halt distribution of the diesel Genesis GV-80 SUV due to "*vibration issues*" of the engine. [6]

11.     Despite this knowledge, however, Defendants did not correct the instability issues with the Genesis GV-80 SUVs

12.     Instead, placing profit over safety and in a bid to get the Genesis GV-80 SUVs on the market in an attempt to cure slumping sales, Defendants, Hyundai/Genesis intentionally concealed, misrepresented and/or otherwise fraudulently failed to advise consumers, such as

---

[3] https://cars.usnews.com/cars-trucks/genesis/gv80
[4] https://www.edmunds.com/genesis-gv80-lease-deals-pennsylvania/
[5] https://www.genesis.com/us/en/2021/genesis-gv80.html
[6] The Korean Times, "*GV80 Diesel Becomes Headache for Hyundai Motor*" June 1, 2020.

Plaintiff, of the defects in their Genesis GV-80 SUVs, with such defects causing the SUVs to dangerously shake, shudder, vibrate and uncontrollably attempt to veer off the roadway, while driving at moderate speeds.

13.     Hyundai/Genesis has also failed to correct the defects of the Genesis GV-80 SUV, following purchase or lease, leaving consumers, like Plaintiff, without use and access to their SUVs for substantial periods of time, while the vehicles are in for inspections and attempts at repair, to their great inconvenience and expense.

14.     Accordingly, Plaintiff, for herself and all others similarly situated, brings this action for reimbursement requiring Hyundai/Genesis to repair or buy back all Class Vehicles, make whole all Class Members for all costs, inconveniences, economic losses associated therewith, attorney fees, and such other damages permitted under applicable law, in an amount to be determined at trial.

## II.     The Parties:

15.     Plaintiff, Dr. Barbara Feinstein, is a resident of the State of Maryland.

16.     Defendant, Hyundai Motor Company, is a Korean corporation headquartered in Seoul, South Korea.  Defendant, Hyundai Motor Company, is the designer, manufacturer and distributor of the Class Vehicle, the 2021 Genesis GV-80 SUV.

17.     Defendant, Hyundai Motor America, Inc., is a California corporation with its principal place of business located in Fountain Valley, California.  Defendant, Hyundai Motor America, Inc., is a subsidiary of Defendant, Hyundai Motor Company.  Defendant, Hyundai Motor America, Inc., is responsible for sales, marketing, and distribution of Hyundai automobiles, including the Class Vehicle, the 2021 GV-80 Genesis, in the U.S.

18.     Defendant, Genesis Motors LLC, is a California limited liability corporation with its principal place of business located in Fountain Valley, California.  Defendant, Genesis Motors LLC, is the luxury brand division of Defendant, Hyundai Motor Company, responsible for distribution, marketing and service of Genesis vehicles in the United States.

**III.    Jurisdiction and Venue:**

19.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because the putative class numbers 100, the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

20.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Defendants by virtue of their doing business in this Judicial District.  Defendants have also engaged in statutory violations within the State of Maryland and this District, as set forth more fully below.

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391. Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the acts and omissions giving rise to the claims occurred, at least in part, within this District. Defendants market, advertise, sell and lease the Class Vehicle, the 2021 GV-80 Genesis SUV, here at Defendants' dealerships, and otherwise conduct extensive business within this District, including benefitting from substantial revenue and profits from the sales and/or leases of Class Vehicles in this District.

**IV.**    **Factual Allegations:**

*A.*    *Facts Specific to Plaintiff:*

23.    The Plaintiff, Dr. Barbara Feinstein, leased a 2021 Genesis GV-80 SUV from Heritage Towson Hyundai, located in Towson, MD, on or about February 26, 2021.

24.    Per the terms of the lease agreement, Plaintiff paid $2,500 up front, toward the lease and agreed to pay $921.73 a month for 36 months, for total payments of $35,160.55.

25.    At the time Plaintiff took possession of the Genesis GV-80 SUV from Heritage Towson Hyundai on or about February 26, 2021, the odometer registered 107 miles.

26.    On or about March 1, 2021, just two day after leasing her Genesis GV-80 SUV and with the SUV having only been driven a little over 107 miles, Plaintiff, and her husband, departed Highland, MD for an approximate 1,100-mile trip to their home in Florida.

27.    After driving for just a few hours and having reached moderate speeds of only 40 mph, Plaintiff's Genesis GV-80 SUV began to dangerously shake, shudder, vibrate and pull to the left, causing a continuous struggle to keep the SUV from veering off the road.

28.    Upon arriving in Florida, Plaintiff contacted Delray Acura Hyundai in Delray Beach, Florida, over the issues with her Genesis GV-80 SUV's instability and subpar driving performance.

29.    Plaintiff spoke with a gentleman who identified himself as "Mike," the service manager at Delray Acura Hyundai.

30.    "Mike" scheduled an appointment to inspect Plaintiff's Genesis GV-80 SUV on March 8, 2021.

31.    Thereafter, Plaintiff took her Genesis GV-80 SUV for inspection at Delray Acura Hyundai.

32.    Upon completion of an inspection, "Mike" advised Plaintiff that there was something seriously wrong with the SUV.

33.    Plaintiff was given a loaner vehicle in order for the service department at Delray Acura Hyundai to further determine the cause of the shaking, shuddering, vibrating and pulling of Plaintiff's Genesis GV-80 SUV and to check the alignment.

34.    "Mike" speculated to Plaintiff that the tires on her Genesis GV-80 SUV were out of balance.

35.    Plaintiff was eventually informed that "Hyundai National" had become involved in the attempted repair of her Genesis GV-80 SUV and had authorized the replacement of one of the SUV's axles.

36.    Plaintiff, and her husband, were forced to fly back to Baltimore without her Genesis GV-80 SUV, to their great detriment, expense and inconvenience.

37.    Delray Hyundai replaced the axle of Plaintiff's Genesis GV-80 SUV and informed Plaintiff that "the problem had been solved and the car ran great."

38.    "Hyundai National" arranged for the SUV to be transported from Delray to Towson, MD.

39.    On or about April 4, 2021, Plaintiff retrieved her Genesis GV-80 SUV from the Towson dealer and drove it home, some 30 miles away.

40.    Again, starting at speeds of approximately 45 miles per hour, Plaintiff's Genesis GV-80 SUV shook, vibrated, and continued to pull to the left.

41.    Again, Plaintiff was forced to take her Genesis GV-80 SUV back to Heritage Towson Hyundai.

42.     This time, Plaintiff was told by Heritage Towson Hyundai that her Genesis GV-80 SUV's driveshaft needed to be replaced.

43.     On or about April 7, 2021, Plaintiff was told the driveshaft had been replaced and the SUV was given another alignment.

44.     Plaintiff retrieved her Genesis GV-80 SUV from the Heritage Towson Hyundai dealer the same day, and despite the second alignment, the SUV continued to pull to the left.

45.     Moreover, Plaintiff continued to experience a low but constant vibration in the steering wheel and head rest, along with a shuddering while driving.

46.     On May 15, 2021, Plaintiff again left her Genesis GV-80 SUV at the Heritage Towson Dealer at the request of the service manager to conduct further tests.

47.     Despite that all four tires of Plaintiff's Genesis GV-80 SUV were recently balanced, the service manager called Plaintiff on May 16, 2021 to inform her that they found the right front tire of her SUV to be off substantially and that they were ordering a new tire.

48.     As of May 27, 2021, Heritage Towson Hyundai had spent 12 days working on Plaintiff's Genesis GV-80 SUV.

49.     Combined with the prior service periods, Plaintiff has been without the SUV she leased for over 38 days during her 82 days of the lease period.

50.     To date, Plaintiff remains without her 2021 Genesis GV-80 SUV to her great detriment and inconvenience.

B.      *Facts Common to All Class Members*:

51.      Plaintiff is not the only consumer who has purchased or leased a 2021 Genesis GV-80 SUV and then experienced similar issues with dangerous driving, instability and subpar performance, including shaking, shuddering, vibrating and pulling of the Genesis GV-80 SUV, attempted and failed repairs, and resulting periods without the SUV for which they paid.

52.      The following screen shots from the website: genesisowners.com, evidence that other consumer who have purchased or leased a 2021 Genesis GV-80 SUV, experienced the same or similar issues with driving instability and subpar performance:









**MAR 28, 2021**   #150

> GV80AL said:
>
> My GV80 AWD with 2500 miles started vibrating after driving after about 25 miles at highway speed....

They are replacing the full rear drive shaft. Part is coming from Korea. Just waiting for the part could be 2/3 weeks. They estimate I'll have the car back mid April. It's a bit ridiculous, but nothing I can do at this point.

CanadianGV80
Registered Member

Genesis Model Type:
Genesis GV80

Reply



**APR 15, 2021**   #160

Have had my GV80 for about 4 months now and love it. But at 3800 miles, started to get the vibration issue. The dealer has diagnosed it and is ordering a rear driveshaft. He said this is the second GV80 they've had in for the issue. I've had the same symptoms as others - after driving for 10-15 miles, vibration starts. Only noticeable in the 35-70 mph range.

UTAHGV80
New member

Genesis Model Year:
2021
Genesis Model Type:
Genesis GV80

Reply



**APR 15, 2021**   #165

Hey I don't know if the dealer pissed off HQ, but they are sure enough pissing me off. According to the handy online VIN decoder, mine is from Ui-San. If you can find out when you pick yours up, what is the defect with the driveshaft that causes the vibration? Hope your new one works better.

GV80AL
New member

Genesis Model Type:
Genesis GV80

Reply



**APR 15, 2021**   #166

> GV80AL said:
>
> Hey I don't know if the dealer pissed off HQ, but they are sure enough pissing me off. According to the handy online VIN decoder, mine is from Ui-San. If you can find out when you pick yours up, what is the defect with the driveshaft that causes the vibration? Hope your new one works better.

Mine is Ui-San too. Will let you know, the tech called today and said it was the u-joint(I mentioned that when I dropped it off 25 days ago) was more likely the culprit, they replaced the full rear drive shaft too. Along with the temperature sensor(was faulty). Picking up the vehicle tomorrow and will report back. Don't buy vehicles made on a Friday or from Ui-San apparently people.

CanadianGV80
Registered Member

Genesis Model Type:
Genesis GV80

Reply



53.     It is believed and therefore averred that a sufficient number of purchasers and lessees of the 2021 Genesis GV-80 SUV have been similarly harmed by the same defects of the SUV and have heard the same misrepresentations and concealments made by Defendants, so as to certify a Class Action against Defendants.

54.     The claims of the proposed Classes all derive directly from a single course of conduct by Defendants, in designing, manufacturing, advertising, marketing and distributing of a defective vehicle and misrepresenting and concealing the vehicle's defects from consumers, such as Plaintiff, and others similarly situated.

55.     As such, Defendants have engaged in uniform and standardized conduct toward the proposed Classes. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of its statements or omissions, among individual Class Members.

56.     The objective facts on these subjects are the same for all Class Members.

57.     Within each Claim for Relief asserted by the respective proposed Classes, the same legal standards govern.

---

[7] https://genesisowners.com/genesis-forum/threads/gv80-bugs-other-issues.32453.

58.     Additionally, many states — and for some cause of action, all states — share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims.

59.     Accordingly, Plaintiff bring this lawsuit as a class action on her own behalf, and on behalf of all other persons similarly situated, as members of the proposed Classes identified below, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4).

60.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

**V.     Class Action Allegations:**

61.     "Class Vehicles" includes, but may not be limited to, Defendants' 2021 Genesis GV-80 SUV.

65.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action individually and on behalf of the following proposed nationwide class of persons, initially defined as:

**<u>Nationwide Class:</u>**

All persons or entities who bought, leased, or own a Class Vehicle in the United States.

66.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff seeks to represent the following state classes, if the Court declines to certify the Nationwide Class above.  Specifically, the State Class consist of the following:

**<u>Maryland State Class:</u>**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Maryland.

67.     Together, the Nationwide Class and the State Class shall be collectively referred to herein as (the "Class").

68.     The Class and State Class do not include Defendants; any affiliate, parent or subsidiary of Hyundai/Genesis; any entity in which Hyundai/Genesis have a controlling interest; any officer, director or employee of Hyundai/Genesis; any successor or assign of Hyundai/Genesis; Plaintiff's counsel or anyone employed by Plaintiff's counsel in this action and their immediate families; any judge to whom this case is assigned and any member of his/her immediate family and staff; governmental entities; or individuals who have personal injury claims as a result of conduct and/or defects alleged herein.

69.     Plaintiff reserves the right to amend or supplement the Class descriptions with greater specificity or further division into subclasses or limitation to certain issues, after conducting discovery in this matter.

70.     Plaintiff also reserves the right to amend or supplement the Class Vehicle after conducting discovery in this matter.

B.      *Fed. R. Civ. P. 23 Class Certification Requirements:*

71.     **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that Hyundai/Genesis has sold over 7800 Class Vehicles nationwide to date.[8] Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

72.     **Commonality and Predominance** – Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class

---

[8] https://carfigures.com/us-market-brand/genesis/gv80.

Members, as is required by Fed. R. Civ. P. 23(a)(2) and (b)(3). These common questions include, but are not limited to:

a.  Whether Defendants engaged in the conduct alleged herein;

b.  Whether Defendants designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicle into the stream of commerce in the United States;

c.  Whether the Class Vehicle has, and was sold with, the following defects; whether those defects constitute a safety defect; and whether Defendants intentionally concealed and misrepresented the Class Vehicles' driving capabilities and hid known defects:

    i.  defective driveshaft design;

    ii.  defective driveshaft manufacturing;

    iii.  defective axel design;

    iv.  defective axel manufacturing;

    v.  defective steering system design; and

    vi.  defective steering system manufacturing;

d.  Whether a reasonable consumer would consider the defects alleged herein and/or their consequences material to the decision to purchase or lease a Class Vehicle;

e.  When Defendants discovered, knew, or should have known of the existence of the defects alleged herein and their subsequent actions and inactions related thereto;

f.  Whether Plaintiff and the other Class Members overpaid for their Class Vehicles as a result of the defects and Defendants' concealment of said defects;

g.  Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiff and Class Members;

h.  Whether Plaintiff and Class Members suffered out-of-pocket losses as a result of the defects alleged herein, and if so, how much;

i.  Whether Plaintiff and Class Members will suffer out-of-pocket losses as a result of the defects alleged, and if so, how much;

j.      Whether Plaintiff and Class Members are entitled to damages and monetary relief and, if so, in what amount;

k.      Whether Defendants omitted, concealed, and/or failed to disclose material facts about the Class Vehicle;

l.      Whether Defendants' concealment of the true nature of the Class Vehicle would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicle;

m.      Whether Plaintiff and Class Members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

n.      Whether Plaintiff and Class Members are entitled to damages and monetary relief and, if so, in what amount; and

o.      Whether Defendants' conduct violates the laws as set forth in the causes of action alleged in this Complaint, including but not limited to, the Maryland and other applicable states', Consumer Protection and false advertising laws.

73.    **Typicality** – The claims of the representative Plaintiff are typical of the claims of each member of the Class, thus satisfying Fed. R. Civ. P. 23(a)(3).  Plaintiff, like all other members of the Class, has sustained damages arising from Defendants' violations of the laws, as alleged herein. The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendants. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of all other members of the Class.

74.    **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class Members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation, thus satisfying Fed. R. Civ. P. 23(a)(4). There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class Members.

75. **Declaratory or Injunctive Relief** – Hyundai/Genesis has acted and refused to act on grounds generally applicable to Plaintiff and Members of the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate regarding the Class as a whole. Fed. R. Civ. P. 23(b)(2).

76. **Superiority** – This suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(3), because a class action is superior to any other available means for the fair and efficient adjudication of this dispute and no unusual difficulties are likely to be encountered in its management of this class action. The damages suffered by individual Class Members are small in comparison to the burden and expense of individually litigating each claim and based on the complex and extensive litigation needed to address Defendants' conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class Members themselves could afford such individual litigation, the court system could not.   In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

77. **Ascertainability**: Upon information and belief, the precise number of Class Members may be ascertained from Defendants' records and vehicle sale, lease and or registration records. Plaintiff contemplates the eventual issuance of notice to the proposed Class Members setting forth the nature of the instant action. Upon information and belief, Class Members may be

16

notified of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notices, in addition to Defendants' own business records.

VI.     **Claims for Relief:**

**COUNT ONE**
**VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT**
**MARYLAND CODE ANN., COM. LAW § 13-101 ET SEQ.**

78.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully stated herein.

79.     Maryland's Consumer Protection Act ("CPA"),   Md. Code Ann., Com. Law § 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the sale or lease of consumer goods.  Md. Code Ann., Com. Law § 13-303(1).

80.     Plaintiff and the Class Members are "consumers" under the CPA. Md. Code Ann., Com. Law § 13-101(c).

81.     The CPA specifically prohibits Defendants from making any false or misleading oral or written statement or other representation of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers. Md. Code Arm., Com. Law § 13-301(1).

82.     The CPA prohibits Defendants from representing that Consumer goods are of a particular standard, quality, grade, style, or model when they are not. Md. Code Ann., Com. Law § 13-301(2).

83.     The CPA prohibits Defendants from advertising Consumer goods without the intent to sell or lease as advertised or offered. Md. Code Ann., Com. Law § 13-301(5).

84.     The CPA prohibits Defendants from engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact, with the intent that a consumer rely on the same in connection with the promotion or sale of any Consumer goods or the subsequent performance of a merchant with respect to an agreement of sale or lease. Md. Code Ann., Com. Law § 13-301(9).

85.     The CPA further prohibits Defendants from failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Com. Law § 13-301(3).

86.     In violation of the CPA, Defendants misrepresented and concealed the defective conditions, as set forth above and throughout this Complaint, of the Class Vehicle from the Plaintiff and other Class Members.

87.     By doing so, Defendants engaged in unfair and deceptive practices in violation of the CPA, Md. Code Ann., Com. Law § 13-101 *et seq.*

88.     As a result of Defendants' unfair and deceptive trade practices in violation of the CPA, Plaintiffs and Class Members were induced to purchase or lease the Class Vehicle.

89.     Defendants acted knowingly at all times material.

90.     Plaintiffs and the members of the Class seek to recover all permitted damages and their attorneys' fees caused by Defendants' violations of the CPA, Md. Code Ann., Com. Law § 13-101 *et seq.*

## COUNT TWO
## BREACH OF EXPRESS WARRANTY

91.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully stated herein.

92.     Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and promotion, that the Class Vehicles were safe, free of defects and provided high performance driving capabilities.

93.     The Class Vehicle did not conform to these express representations because of the reason set forth above and throughout this Complaint.

94.     As a result Plaintiff and the Class Members sustained damages as a foreseeable, direct, and proximate result of Defendants' acts and/or omissions for which they seek full recovery.

## COUNT THREE
## BREACH OF IMPLIED WARRANTIES

95.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully stated herein.

96.     At the time the Defendants designed, manufactured, marketed, promoted, advertised, distributed and/or sold the Class Vehicle, Defendants impliedly warranted that the Class Vehicle was of a merchantable quality and safe for its intended use.

97.     Defendants breached their implied warranties of the Class Vehicle as it was not fit for its common, ordinary and intended use, i.e. safe, high performance driving.

98.     As a result of Defendants' Breach, Plaintiff and the Class Members sustained damages as a foreseeable, direct, and proximate result of Defendants' acts and/or omissions for which they seek full recovery.

## COUNT FOUR
## RESTITUTION AND UNJUST ENRICHMENT

99.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully stated herein.

100.    Defendants knew or should have known that Plaintiff and the Class Members paid for the Class Vehicle with the expectation that it would perform as represented.

101.    Plaintiff and the Class Members conferred substantial benefits on Defendants by purchasing and leasing the defective Class Vehicle.

102.    Defendants knowingly and willingly accepted and enjoyed those benefits.

103.    Defendants' retention of these benefits is inequitable.

104.    As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff and the Class Members are entitled to restitution, attorneys' fees, costs and interest.

**COUNT FIVE**
**ALTERNATIVE COUNT FOR VIOLATION OF**
**STATE CONSUMER PROTECTION ACTS**

105.    Plaintiff repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully stated herein.

106.    Plaintiff brings this alternative cause of action on behalf of herself and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts including:

a.      the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 et seq.;

b.      the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

c.      the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.;

d.      the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

e.      the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. and 17500, et seq.;

f.      the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

g.      the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, et seq.;

h.      the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42- 110, et seq.;

i.      the Delaware Consumer Fraud Act, 6 Del. Code § 2513, et seq.;

j.      the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq.;

k.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

l.      the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, et seq.;

m.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, et seq.;

n.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, et seq.;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, et seq.;

p.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

q.      the Iowa Private Right of Action For Consumer Frauds Act, Iowa Code § 714h.1 et seq.;

r.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

s.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq.;

u.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.;

v.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, et seq.;

w.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

x.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

y.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, et seq.;

z.      the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101 et seq.;

aa.   the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, et seq.;

bb.   the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.

cc.   the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. § 358-A:1, et seq.;

dd.   the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

ee.   the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

ff.   the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

gg.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

hh.   the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

ii.   the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

jj.   the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

kk.   the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

ll.   the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

mm.   the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

nn.   the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5- 10, et seq.;

oo.   the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

pp.   the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

qq.   the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

rr.   the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, et seq.;

ss.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

tt.    the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

uu.    the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

vv.    the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A, et seq.;

ww.    the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

xx.    the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq. 223.

107.    Defendants' acts, practices, misrepresentations and omissions and deceptive and misleading advertising and marketing in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

108.    Plaintiff, on behalf of herself and the other Class Members, seeks monetary damages, treble damages, and such other and further relief as set forth in each of the above enumerated statutes.

## VII.    Prayer for Relief:

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendants as follows:

A.    For an order certifying the Class, appointing Plaintiff as Representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

B.    For a declaration that Class Vehicles are defective, that remedial work necessary to correct the defective conditions of is covered by the Warranty, and the Warranty fails of its essential purpose;

C.    For compensatory damages and/or restitution or refund of all funds acquired by Defendants from Plaintiff and Class Members as a result of Defendants' unlawful, unfair,

deceptive and unconscionable practices described herein and in the consumer protection statutes of Maryland and such other States in which Class Members reside, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

     D.       Payment of costs and expenses of suit herein incurred;

     E.       Both pre-and post-judgment interest on any amounts awarded;

     F.       Payment of reasonable attorneys' fees and expert fees;

     G.       Punitive damages where available; and

     H.       Such other and further relief as the Court may deem proper.

## VIII.  Demand for Jury Trial:

Plaintiff and the Classes hereby demand trial by jury of all issues triable by right.

Respectfully submitted,

BY:    */s/ Marcus W. Corwin*
       Marcus W. Corwin, Esq.
       MD Bar # 8611010003
       FL Bar # 0764647
       CORWIN LAW
       MARCUS W. CORWIN, P.A.
       6001 Broken Sound Parkway NW
       Suite 404
       Boca Raton, FL 33487
       561.482.3636 – Telephone
       561.482.5414 – Facsimile
       mcorwin@corwinlawfirm.com
       admin@corwinlawfirm.com
       sconteaguero@corwinlawfirm.com

       *Counsel for Plaintiff*